This case is a fairly simple case. It's based on the fact that the guidelines were inappropriately assigned. The base level was inappropriate. It was based on more than 500 grams up to 5 kilos of methamphetamine. And the amount of drugs assigned to Ms. Morsette was based solely on the testimony of a policeman who had talked to Ricky Lemire, who was a witness. He had not ever said anything under oath in the Morsette case. However, I notified the where he had testified under oath, and he said she was his sole supplier. Well, he also testified, he also made a statement to police that Morsette was his sole supplier and that he had sold her 10 pounds of drugs. The policeman who testified for the government simply repeated what he had talked to, and then he vouched for his credibility by saying instead of having extrinsic evidence, which is required under the law, he simply said that because this Wendy Wallraven said that she heard that Ricky Lemire got his drugs from Morsette, that that was credible in his estimation. How much, what quantity does your client admit to? She admitted to 500 grams. Which is what was in play in the criming charge, yes? Yes, she would have been at level 32, and that's the amount of drugs that she admitted to was 500 grams. And her correct level then would have been 32. Okay. All right. Anything further? Huh? Anything further? I mean, you can save your time for a bottle after you hear, I don't mean to rush you, but if maybe you want to hear what the government has to say and give yourself time to respond. I want to save some time for it. You've got everything that's left on the clock, it's yours. Okay. We'll hear from the government. Good morning, Your Honor. Eric Wolf for the government. May it please the Court and counsel. There are two issues here. One is the initiative reliability on this hearsay testimony, and then assuming it is not a due process problem, then preponderance of the evidence. Aren't we supposed to find, if we let hearsay in, some real corroboration of it? And I couldn't seem to find it here. The only thing, LaMere was incriminating himself by his statement, but that's the only list that I could find. I think there's a little more than that. There's no, there's not the type of physical corroboration where there was a drug bust or something like that. I'll just go through what's in there. He did incriminate himself, and he was held responsible for 10 pounds, and he pled guilty. These statements we're talking about are statements that were made before LaMere was ever charged. There was a bust in December of 2003, and LaMere is tangled up with this other group of people, Larson and Poitra, and they go to him and say, okay, where were you getting your drugs? And they interview him twice, in April and in May of 2003. And he's very consistent about how much he got. He said, I estimate 10 pounds, I would get half ounce to three ounces. I would get it like four to six bags of half ounce quantity. He gave that statement twice, and after those statements, he's then charged. So this isn't in plea negotiations or anything like that. It's not, it doesn't have a problem like Petty, where he's sort of corroborated by Wall Raven. Wall Raven says, I got methamphetamine from LaMere, and he said he got it from Gina Morissette, and they talked all the time, and I assumed that she was the supplier. How is that corroboration? How does that corroborate? If she says, if, if, isn't it the same source? It is, it's... This is not an independent source. I mean, this is still the same guy telling the same story. Right. It's not, but it's not a story that he's telling to the cops. It's a story that he's, you know, he's in the middle of drug dealing. He says, this is who I'm getting it from. And I, in the PSR, Wall Raven... He doesn't say, he doesn't say how much. No, he doesn't. No. He, he... He doesn't corroborate the quantity. Even if you consider it corroboration, it doesn't corroborate the quantity. That's correct. The quantity is really what the issue is here. It is, although, when you, when you have Morissette herself, doesn't dispute that she dealt at least 500 grams and gave it to LaMere, and that she was part of a conspiracy with her mother and her sister. And then LaMere says, yep, that's right, and here's when it was, and those time periods fit. There's no corroboration on the amount, but it's undisputed that she is dealing to Rick LaMere at this time, and it's a historical conspiracy. I mean, it basically entails asking people, where did you get your drugs? She could have... The government's position is, we met the low, minimal, and disreputable liability, and then it becomes a preponderance question. And on the preponderance of question, there's nothing for Morissette. I mean, there's her plea, and that's it. She didn't testify under oath. She didn't call in her mother or her sister to talk about their operation. So that's basically the lay of the land. We think that's enough. There are no further questions. What are the inconsistencies between his testimony in this case and in the case that was cited to us that involved Larson? The Larson group is from a bust that occurred in December 2003. And in the case here involving Morissette, and this is explained in the PSR, Lemire is dealing with Morissette up until December 2003. He has a falling out with her. He rips her off. He's scared of her. And my understanding is he turns to other sources, and that includes Larson and another person named Labrador. They then get busted, and that group is charged together. That's when they go to Lemire and say, OK, tell us all your drug dealing, and he brings in the Morissette family. You know, the defense has tried to say, well, it's inconsistent because he makes it sound as if Gina Morissette was his only source, but actually in this other trial he had a source from Larson. It's two different time periods, but it's also what he's saying is, I was the dealer for Gina Morissette, and I was a really good dealer, and I made her lots of money, and I was getting 4 to 6 ounces, or 4 to 6 one-ounce bags every day at least 50 times up to 10 pounds. And she admits that she was giving him meth at that time. She just disputes the quantity. Is there some kind of consistency in the timing that he said that he was dealing with her? There is. In the statements before he's charged back in 2003, he estimated it was roughly a year, or a little shy of a year. In 2007, which is just shy of 4 years later, he estimated it was about 3 months. He's never wavered on the quantity, though. The quantity's been consistent throughout. But we don't have any corroboration on the quantity. I can't deny that, yeah. I mean, it's his word. He's said it more than once, and they definitely dealt drugs together. That's the best I have. Counsel, what case most strongly supports your argument that this evidence is sufficient to support the quantity amount? What case is closest to the facts of this case that you're relying on? You know, I honestly can't say it's any case we cited, because I looked at all the ones we cited, and they're very general. Ross Acker is cited by us just for the fact that it's only a preponderance standard. It's not clear and convincing or anything higher than that. I'm talking about on the issue of the testimony hearsay. Sure. Of the cases I looked at that are not in our brief, and I apologize for that, United States v. Little Son is a case where the defendant's wife told a BIA agent that he had dealt an ounce on a particular day, and then the agent was the one who testified at the sentencing, and this court affirmed. That was... Of the cases I looked at in preparation, I thought that was probably the best. Okay, thank you. The point is, the math just doesn't add up here. Ricky LeMire claims that he... that she was supplying him, and then he claims that Gina supplied him with the whole 10 pounds that he actually ended up being convicted for. Now, if he'd been convicted for 20 pounds, the math might add up, but in this case, it doesn't add up. And there just simply wasn't any sufficient extrinsic evidence to support this guy's statement. Why would he lie about this? Why would he lie about it? Yeah, I mean, there's nothing in it for him, and it actually winds up hurting him. He would have gotten more time off than probably did for using his statement on Morset. And he testified in Larson, so he could get time out. But apparently he made the statement before there were pre-negotiations. This is a story told to the police, and then he got charged. Why would he overstate the amount of drugs involved when this would expose him to more time? I don't know. All I can say is he admitted to us when we interviewed him that he was a heavy drug user and he didn't have a very good memory for the facts. But that's not an evidence because he didn't testify. And I don't think anybody who has been on drugs as long as he has can be assumed to have an extremely accurate memory. Anyway, one of the cases the government cited here, Garcia-Sanchez, and that consisted of an agent saying that somebody told them something and that there wasn't any testimony under oath.  Lemire was never placed under oath in this, and he was never placed The due process requires at least that he have some ability to corroborate what he says. All they did was have the policeman go up and vouch for what he said. But there's no dispute that that's what he said. You don't dispute that. You don't say the policeman got them on. There's no dispute that, in fact, he said that. Oh, no. He said that. All right, thank you. The case is signed. You will stand submitted for next year argument in United States v. Newcombe.
judges: Kozinski, Fletcher, Rawlinson